## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **JOHN DOE,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No.: 5:21-cv-00110-MHH** |
| | } | |
| **HUNTSVILLE CITY SCHOOLS** | } | |
| **BOARD OF EDUCATION,** | } | |
| **SHARISSA CAGLE-BAILEY,** | } | |
| **ROBERT PERSON, HEATHER** | } | |
| **BARDWELL, BELISSA** | } | |
| **HOWARD, AND  LESLIE** | } | |
| **ZUROWSKI,** | } | |
| | | |
| **Defendants.** | | |

## MEMORANDUM OPINION

This case arises out of a public school's failure to protect its student, John Doe, from bullying by other students.  Several teachers, the school principal, two assistant principals, and the school board of education have filed a partial motion to dismiss. (Doc. 10).  The defendants argue that John Doe has not pleaded a claim for a substantive due process violation and that they are immune from John Doe's state law claims.  For the reasons stated below, the Court will deny the motion as to John Doe's substantive due process claim and will grant the motion as to John Doe's state law claims.

**MOTION TO DISMISS STANDARD**

Rule 12(b)(6) enables a defendant to move to dismiss a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). Pursuant to Rule 8(a)(2), a complaint must contain, "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Generally, to survive a Rule 12(b)(6) motion to dismiss and meet the requirement of FED. R. CIV. P. 8(a)(2), "a complaint does not need detailed factual allegations, but the allegations must be enough to raise a right to relief above the speculative level." *Speaker v. U.S. Dep't of Health & Human Servs. Centers for Disease Control & Prevention*, 623 F.3d 1371, 1380 (11th Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Twombly*, 550 U.S. at 555).

In deciding a Rule 12(b)(6) motion to dismiss, a district court must view the allegations in a complaint in the light most favorable to the non-moving party. *Sun Life Assurance Co. v. Imperial Premium Fin., LLC*, 904 F.3d 1197, 1207 (11th Cir. 2018). A district court must accept well-pled facts as true. *Little v. CRSA*, 744 Fed. Appx. 679, 681 (11th Cir. 2018). Therefore, the Court construes all factual

allegations and the reasonable inferences from those allegations in the light most favorable to John Doe, the non-movant.

## FACTUAL BACKGROUND

During the 2016-2017 school year, John Doe was an eight-year-old student at Mountain Gap School in Madison County, Alabama. (Doc. 1, p. 4, ¶ 13). The Huntsville City Board of Education administers Mountain Gap School, and the school receives federal funds for the education of students. (Doc. 1, p. 4, ¶ 14). Heather Bardwell was the principal of the school, and Belissa Howard and Leslie Zurowski were the assistant principals. (Doc. 1, pp. 4–5, ¶¶ 16–18). Sharissa Cagle-Bailey was John Doe's primary teacher, and Robert Person was his physical education teacher. (Doc. 1, p. 5, ¶¶ 19–20).

John Doe has Asperger's Syndrome and Charcot-Marie-Tooth Syndrome. (Doc. 1, p. 1, ¶ 1).[1] In August of 2016, John Doe became the target of frequent bullying and physical assaults from his classmates, including C.G., D.S., and M.J. (Doc. 1, pp. 4–5, ¶¶ 13, 22). D.S. and M.J. held John Doe on the ground while C.G. punched him in the genitals. (Doc. 1, p. 5, ¶ 22). These assaults occurred in the bathroom, during Mr. Person's physical education class, and on the playground.

---

[1] Asperger's Syndrome is "a developmental disorder characterized by significant difficulties in social interaction and nonverbal communication," and Charcot-Marie-Tooth Syndrome is "a neurological chromosomal disability affecting [John Doe's] motor and sensory abilities." (Doc. 1, p. 1, ¶ 1).

(Doc. 1, p. 5, ¶ 22). John Doe told his teachers, Ms. Cagle-Bailey and Mr. Person, seven or eight times about the assaults, but neither teacher stopped the bullying. (Doc. 1, pp. 5–6, ¶¶ 23–24).

After Ms. Cagle-Bailey and Mr. Person refused to intervene, on December 13, 2016, John Doe told his mother, Mary Doe, that he "was being punched in the nuts by the meanest toughest bully," which had made John Doe bend over in pain. (Doc. 1, p. 6, ¶ 25). Mary Doe immediately emailed Ms. Cagle-Bailey to demand that she stop the assaults, but Ms. Cagle-Bailey did not respond, and the bullies continued to hit John Doe. (Doc. 1, p. 6, ¶ 26). Mary Doe sent a second email to Ms. Cagle-Bailey. Again, she received no response, so, on December 14, 2016, she went to the school to speak with Ms. Zurowski. (Doc. 1, p. 6, ¶ 27). That same day, the bullies punched John Doe again. (Doc. 1, p. 6, ¶ 28).

John Doe's family contacted Ms. Zurowski, Ms. Bardwell, and Ms. Howard several times in the days that followed—writing emails, calling their phone numbers, and leaving voicemails—but they did not receive a response. (Doc. 1, p. 7, ¶¶ 29–31). M.J. punched John Doe on the arm on December 15, 2016. (Doc. 1, p. 7, ¶ 32).

John Doe went to his family physician over the winter holiday break for an examination of the injuries he received at the hands of the bullies. (Doc. 1, p. 7, ¶ 32). The doctor concluded that John Doe had suffered significant trauma to his genitals, including a "loss of viability" of a testicle. (Doc. 1, p. 7, ¶ 33). Mary Doe

provided the school a letter from the doctor in which he explained the extent of John Doe's permanent physical injuries, and the doctor said, "I trust you will do all you can to ensure the safety of [John Doe] and his good health." (Doc. 1, pp. 7–8, ¶¶ 33–34).

Mary Doe and her father met with Ms. Bardwell and Ms. Howard before the spring semester began to discuss a plan for keeping the bullies completely away from John Doe. (Doc. 1, pp. 7–8, ¶ 34). But when John Doe returned to school on January 4, 2017, the defendants did not separate John Doe from the bullies or transfer John Doe to different classes. (Doc. 1, p. 8, ¶ 35). Instead, Ms. Howard had John Doe meet in her office with C.G. (Doc. 1, p. 8, ¶ 35). She required them to shake hands to make them "become friends." (Doc. 1, p. 8, ¶ 35). After this meeting, C.G. told John Doe that it was "ok" for him to hit John Doe and that he should not tell the teachers when C.G. hit him because "friends don't tell on friends." (Doc. 1, p. 8, ¶ 35).

The meeting with Ms. Howard did not deter the bullies. Approximately a week after the meeting, Ms. Cagle-Bailey emailed Mary Doe that John Doe had gotten in trouble at school for spitting at the bullies. (Doc. 1, p. 8, ¶ 36). The bullies were trying to make him "say bad words" and would not leave John Doe alone. (Doc. 1, p. 8, ¶ 36). John Doe alleges he was disciplined for this incident, but he does not allege whether the bullies were disciplined. (Doc. 1, p. 8, ¶ 36).

Eventually, the school provided an aide to supervise John Doe, but the bullies' physical assaults during P.E. continued. (Doc. 1, p. 8, ¶ 37). Mary Doe withdrew John Doe from the school after the bullies shoved him during class. (Doc. 1, p. 8, ¶ 37). On February 3, 2017, John Doe had surgery to repair his viable testicle and remove the testicle permanently damaged by the physical assaults. (Doc. 1, p. 8, ¶ 38). As he ages, John Doe may need surgery to remove his other testicle due to the physical trauma he received. (Doc. 1, pp. 1–2, ¶ 1).

Based on these events, John Doe, who sues by and through his guardian and next of friend, Mary Doe, alleges various federal and state law claims against the Huntsville City Board of Education, Ms. Bardwell, Ms. Howard, Ms. Zurowski, Mr. Person, and Ms. Cagle-Bailey. (Doc. 1). Against all defendants, John Doe alleges violations of his 14th Amendment due process and equal protection rights under 42 U.S.C. § 1983 and a claim under Alabama law for outrage. John Doe brings claims against the Board for violations of the Americans with Disabilities Act, codified at 42 U.S.C § 12132; violations of Title IX, codified at 20 U.S.C. § 1681, *et seq*.; and negligent, reckless, or wanton hiring training, retention, and supervision of its teacher-employees. John Doe brings claims of negligence and recklessness or wantonness against the teachers in their individual capacities. (Doc. 1, pp. 9–16).

# ANALYSIS

## I.     Substantive Due Process

In Count II of his complaint, John Doe alleges, pursuant to 42 U.S. Code §
1983, that the defendants violated his substantive due process and equal protection
rights under the Fourteenth Amendment because they did not protect him the
bullying by other students at Mountain Gap.  (Doc. 1, pp. 10–11).  "Section 1983
allows persons to sue individuals or municipalities acting under the color of state
law for violations of federal law."  *Hill v. Cundiff*, 797 F.3d 948, 976 (11th Cir.
2015).  Section 1 of the Fourteenth Amendment of the United States Constitution
provides that "[n]o State shall . . . deprive any person of life, liberty, or property,
without due process of law." U.S. CONST., amend. XIV, § 1.  "The substantive
component of the Due Process Clause protects those rights that are 'fundamental,'
that is, rights that are 'implicit in the concept of ordered liberty.'"  *McKinney v. Pate*,
20 F.3d 1550, 1556 (11th Cir. 1994) (quoting *Palko v. Connecticut*, 302 U.S. 319,
325 (1937), *overruled on other grounds by Benton v. Maryland*, 395 U.S. 784
(1969)).

The defendants argue that John Doe cannot make a claim for a substantive
due process violation because they did not have a constitutional duty to protect John
Doe from the bullies' assaults at school.  The Court of Appeals for the Eleventh
Circuit has "said repeatedly that the Fourteenth Amendment is not a 'font of tort

law'" that can support federal causes of action. *Neal ex rel. Neal v. Fulton Cnty. Bd. of Educ.*, 229 F.3d 1069, 1074 (11th Cir. 2000) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 848 (1998)). "[N]othing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors. The Clause is phrased as a limitation on the State's power to act, not as a guarantee of certain minimum levels of safety and security." *DeShaney v. Winnebago County Dept. of Social Services*, 489 U.S. 189, 195 (1988). Therefore, the circumstances in which government actors can be held liable for substantive due process violations are limited.

Government actors usually do not have a duty to protect individuals from third parties unless the individual is in state custody. *See DeShaney*, 489 U.S. at 195; *see also L.S., et al. v. Peterson, et al.*, 982 F.3d 1323, 1329 (11th Cir. 2020).[2] Absent a custodial relationship, a claim for a substantive due process violation is viable only when a government official acts arbitrarily or in a conscience-shocking way. *See L.S., et al.*, 982 F.3d at 1329 (quoting *Waddell v. Hendry Cnty. Sheriff's Off.*, 329 F.3d 1300, 1305 (11th Cir. 2003)). Therefore, to maintain a substantive due process claim, John Doe must adequately allege that the defendants acted in an arbitrary or conscience-shocking way.

---

[2] Students are not in custody for due process purposes while at school. *Nix v. Franklin Cnty. Sch. Dist.*, 311 F.3d 1373, 1378 (11th Cir. 2002) ("This court has ruled that schoolchildren are not in a custodial relationship with the state."); *see also L.S., et al.*, 982 F.3d at 1329–30.

The shock-the-conscience standard is context specific. *See Nix*, 311 F.3d at 1376–77 ("The somewhat nebulous 'shocks the conscience' phrase has taken on different meanings in different cases, depending on a given case's factual setting."). The United States Supreme Court has held that acts "intended to injure in some way unjustifiable by any government interest" are those "most likely to rise to the conscience-shocking level." *Lewis*, 523 U.S. at 836, 846–47. On the other hand, negligent acts are categorically insufficient to rise to the level of a substantive due process violation. *Lewis*, 523 U.S. at 848; *Davidson v. Cannon*, 474 U.S. 344, 348 (1986) ("The guarantee of due process has never been understood to mean that the State must guarantee due care on the part of its officials."). When a government official's acts "fall between the poles of negligence and malign intent," which includes acts that are reckless or grossly negligent, the Court must make a "close call" to determine if the act, considering the totality of the circumstances at the time of the act and without the benefit of hindsight, shocks the conscience. *Nix*, 311 F.3d at 1376 (citing *Lewis*, 523 U.S. at 849).

Deliberate indifference falls between those two poles; deliberate indifference is a higher level of culpability than negligence, but it is lower than intentional conduct. The Court of Appeals for the Eleventh Circuit has "doubt[ed] that deliberate indifference can ever be arbitrary or conscience shocking in a non-custodial setting," *see L.S., et al.*, 982 F.3d at 1330 (internal quotations omitted), but

the Court of Appeals has suggested that "deliberate indifference to an extremely great risk of serious injury" may give rise to a substantive due process violation in a non-custodial setting when the government actor had sufficient time to deliberate and consider its actions. *Waddell*, 329 F.3d at 1306. A government official acts with deliberate indifference when she "know[s] of and disregard[s] an excessive— that is, an extremely great—risk to the victim's health or safety." *Waddell*, 329 F.3d at 1306.

In the public school context, situations involving intentional, excessive corporal punishment are sufficient to support a substantive due process claim. *See, e.g., Kirkland ex rel. Jones v. Greene Cnty. Bd. of Educ.*, 347 F.3d 903, 904–05 (11th Cir. 2003) (finding a substantive due process violation when the principal hit a student in the head, ribs, and back with a metal cane as a form of discipline); *Neal ex rel. Neal v. Fulton Cnty. Bd. of Educ.*, 229 F.3d 1069, 1074 (11th Cir. 2000) (finding a substantive due process violation when a high school coach struck a student with a heavy metal lock, blinding the student in one eye as punishment for fighting). As in other contexts, negligent conduct that causes harm to public school students will not support a substantive due process claim. For example, in *Nix*, the Court of Appeals held that a high school teacher did not violate a student's substantive due process rights of a student who passed away after touching an electrified wire during a science experiment in the teacher's electromechanical class.

311 F.3d at 1377–79. The Court of Appeals concluded that the student's death was an unfortunate accident caused by the teacher's negligence, and the teacher's actions did not rise to the level of an intentional act to harm the student. 311 F.3d at 1377–79. The Court of Appeals explained that its "holding is a narrow one; it would not necessarily control, say, a similar accident in a 4th-grade classroom, or even other types of seriously harmful behavior occurring in a high-school class." *Nix*, 311 F.3d at 1379 n.2.

The defendants cite cases in which courts in this circuit have found that public school employees did not act in an arbitrary or conscience shocking way in failing to stop bullying or assaults to students, despite the employees' awareness of bullying. *See, e.g, Moore v. Chilton Cnty. Bd. Of Educ.*, 936 F. Supp. 2d 1300 (M.D. Ala. March 27, 2013) (holding no substantive due process violation when school teachers failed to prevent bullying, which caused a high school student to commit suicide); *L.L. ex rel. Linda L v. Tuscaloosa City Board of Educ.*, No. 7:08–cv–2051–LSC, 2013 WL 169612 (N.D. Ala. Jan. 15, 2013) (no substantive due process violation when teachers failed to protect eighth grade student from sexual assault by another student with known sexual aggression); *Long v. Murray Cnty. Sch. Dist.*, Civil Action File No. 4:10–CV–00015–HLM, 2012 WL 2277836 (N.D. Ga. May 21, 2012) (granting summary judgment on the grounds that high school

administrators did not violate a deceased student's substantive due process rights by failing to train employees and provide adequate protection from bullies).

In contrast, a court in this circuit has found that a plaintiff sufficiently pleaded that public school employees acted in a conscience-shocking manner in failing to protect an elementary school student from assault. In *Doe v. Hoover City Board of Educ.,* a first-grade student in the Hoover public school system alleged that she frequently was sexually assaulted by classmates. *Doe v. Hoover City Board of Educ.*, Case No.: 2:19-cv-243-AMM, 2020 WL 5548804, at *1–2 (N.D. Ala. Sept. 16, 2020). After telling her teacher, the teacher did not stop the classmates from going into the bathroom with Jane Doe. *Doe v. Hoover City Board of Educ.*, 2020 WL 5548804, *11–12. The principal punished the classmates for the assaults by making them run laps, and the classmates were not removed from Jane Doe's class. *Doe v. Hoover City Board of Educ.*, 2020 WL 5548804, *11–12. The district court rejected the defendants' arguments that they did not commit a substantive due process violation in failing to protect Jane Doe from the sexual assaults. After distinguishing other cases cited by the defendants in that case, including *Nix v. Franklin Cnty. Sch. Dist.,* the district court concluded, "[a]lthough the court cannot know whether Doe ultimately will adduce evidence that will satisfy the demanding 'shock-the-conscience' test, the Individual Defendants have not identified any binding precedent holding that the conduct alleged in Doe's complaint as a matter

of law cannot shock the conscience." *Doe v. Hoover City Board of Educ.*, 2020 WL 5548804, \*12.

With these examples in mind, and cognizant of the fact that the defendants rely on some summary judgment opinions to support of their motion to dismiss, the Court turns to John Doe's substantive due process claim. John Doe's substantive due process claim more closely resembles Jane Doe's claim than the claims of the plaintiffs in the cases on which the defendants rely. John Doe, like Jane Doe, is a particularly vulnerable student because of his age. John Doe also has developmental disabilities. John Doe was eight years old when he suffered permanent physical injury from bullies, and he has Charcot-Marie-Tooth Syndrome and Asperger's Syndrome. (Doc. 1, p. 1, ¶ 1). Though they involve significant abuse, the cases the defendants cite concern junior high or high school students. The defendants' alleged failure to protect a young, vulnerable student pushes this case toward the conscious-shocking end of the spectrum of substantive due process cases. *See Hatfield v. O'Neill*, 534 Fed. Appx. 838, 847 (11th Cir. 2013) (quoting *M.S. ex rel. Soltys v. Seminole Cnty. Sch. Board*, 636 F. Supp. 2d 1317 (M.D. Fla. 2009) ("The conscience-shocking threshold is more quickly reached in cases where the victim is particularly vulnerable to abuse and is otherwise defenseless.").

So does the defendants' alleged failure to respond to repeated notifications of John Doe's abuse. John Doe alleges that he repeatedly notified his teachers that his

classmates were bullying him, and his mother tried to contact his teachers and school administrators, but the teachers and administrators turned a deaf ear. John Doe alleges he told Mr. Person "at least seven or eight times" from August to December 2016 about the bullies' assaults, and John Doe asked for help from Ms. Cagle-Bailey. (Doc. 1, pp. 5–6, ¶¶ 23–24). In December of 2016, Mary Doe attempted to contact Ms. Cagle-Bailey and the school administration several times about John Doe, but she received no response from the defendants. (Doc. 1, pp. 6–7, ¶¶ 25–31). Mary Doe eventually spoke with Ms. Zurowski and demanded that the school take steps to protect John Doe. (Doc. 1, p. 6, ¶ 27). Mary Doe met with Ms. Bardwell and Ms. Howard in January of 2017 before the beginning of the spring semester, and she gave them a note from John Doe's doctor that explained that John Doe had suffered permanent injury to his testicles because of the bullies. (Doc. 1, pp. 7–8, ¶ 34). Still, John Doe alleges, the defendants did not intervene to protect him until later in the spring semester when the school provided him an aide. (Doc. 1, p. 8, ¶ 37).

When Ms. Howard eventually intervened, instead of separating John Doe from the classmates who were bullying him, she required John Doe to meet with one bully, C.G., to encourage John Doe and C.G. to "become friends." (Doc. 1, pp. 7–8, ¶¶ 34–35). After the meeting, C.G. told John Doe that it was "ok" for friends to hit friends and that he should not tell the teachers because "friends don't tell on friends." (Doc. 1, p. 8, ¶ 35). Thus, Ms. Howard disregarded the danger the bullies

14

posed for John Doe and acted in a way that "render[ed] [John Doe] . . . more vulnerable" to the bullying.  *DeShaney*, 489 U.S. at 201.

On this record, John Doe has adequately pleaded that the defendants violated his substantive due process rights by refusing to intervene to stop classmates from bullying and injuring him.  The defendants may present their legal arguments again on an evidentiary record, but John Doe's factual allegations in his complaint permit his substantive due process claim to survive the defendants' motion to dismiss.[3]

## II.    State Law Claims

Regarding John Doe's state law claims, the Huntsville City Board of Education and the individual defendants argue they are entitled to immunity under Article I, Section 14 of the Alabama Constitution, which states, "[t]he State of Alabama shall never be made a defendant in any court of law or equity."  ALA. CONST. art I, § 14.  "Section 14 immunity is more than a defense; when applicable, it divests the trial courts of this State of subject-matter jurisdiction."  *Alabama State*

---

[3] The Huntsville City Board of Education cannot be held liable for the individual state defendants' actions unless the actions are "fairly deemed to represent government policy, or a custom or practice so pervasive and well-settled that it assumes the force of law."  *Denno v. Sch. Bd. of Volusia Cnty., Fla.*, 218 F.3d 1267, 1276 (11th Cir. 2000).  John Doe does not allege that the individual defendants acted pursuant to an official policy when they ignored his requests for help or required him to meet in Ms. Howard's office with C.G.  But John Doe's allegations concerning the repeated failure of multiple school employees to intervene to prevent bullying of an eight-year-old student, despite notice of physical harm to the student, suggests a well-settled custom or practice of utter disregard for student safety.  Therefore, the Court will not dismiss John Doe's substantive due process claim against the Board.  As with the individual defendants, the Board may raise its legal arguments again on an evidentiary record.

*Univ. v. Danley*, 212 So. 3d 112, 127 (Ala. 2016).  Because municipal and county boards of education are state agencies under Alabama law, the Huntsville City Board of Education is immune from John Doe's state law tort claims.  *See Ex parte Phenix City Board of Education*, 109 So. 3d 631, 632–33 (Ala. 2012); *see also Walker v. Jefferson County Board of Education*, 771 F.3d 748, 754–55 (11th Cir. 2014).  John Doe concedes that the Board is immune from his state law claims against it.  (Doc. 13, p. 11).  John Doe voluntarily dismisses his tort claim for outrage against all defendants.  (Doc. 13, p. 11).  That leaves John Doe's state law claims against the individual defendants for negligence and recklessness or wantonness.  (Doc. 1, pp. 13–15).

State employees sued in their individual capacities are not entitled to Section 14 immunity when a plaintiff alleges that the employees acted fraudulently, beyond their authority, or under mistaken interpretation of law, unless the claim against the employees is, in effect, a claim against the State of Alabama.  *See Barnhart v. Ingalls*, 275 So. 3d 1112, 1225–27 (Ala. 2018); *see also Ex parte Moulton,* 116 So. 3d 1119, 1141 (Ala. 2013); *Taylor v. Troy State Univ.*, 437 So. 2d 472, 474 (Ala. 1983).  To determine if a claim is effectively against the State of Alabama, courts consider several factors, including:

> whether 'a result favorable to the plaintiff would directly affect a contract or property right of the State,' *Mitchell* [*v. Davis*], 598 So. 2d [801,] 806 [ (Ala. 1992) ], whether the defendant is simply a 'conduit' through which the plaintiff seeks recovery of damages from the State,

> *Barnes v. Dale*, 530 So. 2d 770, 784 (Ala. 1988), and whether 'a judgment against the officer would directly affect the financial status of the State treasury,' *Lyons* [*v. River Road Constr., Inc.*], 858 So. 2d [257] at 261 [ (Ala. 2003) ]."

*Haley v. Barbour Cnty.*, 885 So. 2d 783, 788 (Ala. 2004). When a plaintiff must demonstrate that a government official owed a duty to him, the claim likely is against the State if the duty arises only from the defendant's position as a state officer. *Barnhart*, 275 So. 3d at 1226–27 (holding that state officials were entitled to Section 14 immunity for negligence and breach-of-fiduciary claims against them concerning their failure to provide proper benefits to employees because the government officials "had no duties <u>in their individual capacities</u> to give effect to the benefit statutes; rather, any duties they had in that regard existed solely because of their official positions in which they acted for the State.") (emphasis in *Barnhart*).

The individual defendants argue that their duty to protect and discipline students arises only from their position as state officials, either as teachers or administrators. John Doe alleges that the individual defendants did not "act in a reasonably prudent manner when executing their duties as employees of Mountain Gap to supervise, discipline, suspend, and/or expel students who pose a real and immediate danger to their fellow students, and to protect its students from harassment, intimidation, and assault." (Doc. 1, p. 13, ¶ 68; *see also* Doc. 1, p. 14, ¶ 72. Thus, John Doe's state law claims against the individual defendants pertain to those defendants' duties as public school teachers and administrators. Because those

claims are effectively against Alabama, not the individual defendants, the individual defendants are entitled to Section 14 immunity for John Doe's state law claims.

**CONCLUSION**

For the reasons stated above, the Court denies the defendants' motion to dismiss as to John Doe's substantive due process claim and grants the motion as to John Doe's state law claims.

**DONE** and **ORDERED** this July 1, 2021.

_____
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE